No. 95-3784

Ronnie Parker,                          *
                                        *
            Appellant,                  *
                                        *    Appeal from the United States
      v.                                *    District Court for the
                                        *    Eastern District of Missouri.
Michael S. Bowersox,                    *
Jeremiah W. Nixon,                      *
                                        *
            Appellees.                  *

                  Submitted:  June 14, 1996

                  Filed:  August 26, 1996

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN, Circuit Judge, and
      KORNMANN,* District Judge.

WOLLMAN, Circuit Judge.

      Ronnie Parker appeals the denial of his 28 U.S.C. § 2254 petition,
arguing that his Fourteenth Amendment due process rights and his Sixth
Amendment right to effective assistance of counsel were violated during his
state court trial and appeal.  We affirm.

**I.**

      At approximately 2:00 p.m. on February 6, 1989, Beverly Tate was shot
and killed.  Her neighbor, Johnetta Graham, testified that less than two
hours before Tate's death, she saw Parker, Tate's former boyfriend, sitting
on a stool outside the door of Tate's

      *The  HONORABLE  CHARLES  B.  KORNMANN,  United  States
District Judge for the District of South Dakota, sitting
by designation.

apartment. Shortly thereafter, she heard Tate open her door, and she then heard scuffling sounds, as if Tate were trying to close the door but could not because someone was pushing it from the opposite side. As the struggling parties entered the apartment, the noise escalated to screams, and Graham heard punching sounds and then Tate's voice screaming, "Ronnie, stop punching me, Ronnie, stop hitting me." She then heard Parker respond, "Where is my gun? You are playing tricks, you bitch, you bitch." The sounds moved upstairs to where Tate's bedroom was located, and they were subsequently drowned out by the noise of a television.

Graham called the police, who arrived at approximately 12:50 p.m. Two police officers knocked on Tate's door, but heard no answer. The noise quieted. After waiting for approximately thirty minutes, the officers left. Approximately thirty minutes later they returned to Tate's apartment after receiving a call from the apartment manager reporting the sound of a gunshot. They discovered Tate's body, naked on the floor of her bedroom, with a fatal bullet wound to her head.

Latez Strong, who was visiting his sister in the apartment to the immediate left of Tate's, corroborated Graham's testimony, although he testified that he did not know the identities of the male and female that he heard fighting next door. In addition to the sounds heard by Graham, Strong testified that he heard a male voice say, "If [you are] going to act like a dog, I'll treat you like a dog. Get f--- naked." Strong further testified that after the police left the first time, he heard a gunshot.

A criminalist with the St. Louis police department testified that the results from tests of swabs taken from Tate's body indicated anal intercourse. The medical examiner testified that in addition to the gunshot wound to Tate's head, her body contained some "irregular very thin scratches and superficial punctures in the small area of the back and on to the adjacent parts of the

-2-

buttocks."

Mildred Morgan, Tate's mother, testified, over Parker's objection, that Parker and her daughter had fought on previous occasions and that Parker had "blackened her eyes." She also testified that her daughter wished to discontinue her relationship with Parker and had made plans to move to California. Over Parker's objection, Morgan further testified that her daughter did not want Parker around because she had recently completed a drug treatment program. Counsel moved for a mistrial after this testimony, arguing that the implication that Parker was a drug user was irrelevant and prejudicial. The court denied the request for a mistrial, but directed the jury to disregard the last statement.

Following his conviction for murder, sodomy, and armed criminal action, Parker filed a petition for state post-conviction relief, which was denied. After consolidating Parker's appeal from this ruling with his direct appeal, the Missouri Court of Appeals affirmed both Parker's conviction and the denial of his petition for post-conviction relief. Parker then filed this petition for writ of habeas corpus, which the district court[1] denied.

## II.

Parker first argues that his due process rights were violated by the trial court's admission of Mildred Morgan's testimony referring to past fights between Tate and Parker and implying that Parker was a drug user. Parker attacks this testimony as improper evidence of prior bad acts and as irrelevant.

A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they

---

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

-3-

were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process. Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995); Bennett v. Lockhart, 39 F.3d 848, 856 (8th Cir. 1994), cert. denied, 115 S. Ct. 1363 (1995). We find that the errors alleged by Parker were not of such magnitude as to support a due process claim. The jury was instructed to disregard the comment implying that Parker was a drug user, and we presume that it did so. See United States v. Koskela, 86 F.3d 122, 125 (8th Cir. 1996). Moreover, in light of the abundant testimony that Parker was in the apartment threatening and hitting Tate shortly before her death, the evidence that on one or two prior occasions Parker blackened Tate's eyes was not sufficiently prejudicial to fatally infect the trial.

**III.**

Parker next argues that he received ineffective assistance of both trial and appellate counsel. As it pertains to trial counsel, this argument is based on counsel's failure to object to testimony that Parker characterizes as inadmissible hearsay and his failure to call a certain witness in Parker's defense. Parker contends that his appellate counsel failed to appeal the admission of allegedly prejudicial evidence of witness threats and that he failed to appeal the sufficiency of the evidence supporting the murder conviction.

To obtain relief for a claim of ineffective assistance of either trial or appellate counsel, a defendant must show both that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by that deficient performance. Strickland v. Washington, 466 U.S. 668, 687-688 (1984); Harris v. State, 960 F.2d 738, 740 (8th Cir. 1992) (applying Strickland analysis to appellate counsel), cert. denied, 506 U.S. 921 (1992).

-4-

## A. Trial Counsel

Without objection by trial counsel, Morgan testified that her daughter told her that she did not wish to continue her relationship with Parker. The district court characterized this testimony as fitting into the state-of-mind exception to the hearsay rule under Missouri law. See State v. Post, 901 S.W.2d 231, 235 (Mo. App. Ct. 1995). We need not delve into the intricacies of Missouri evidentiary law to determine whether this characterization was correct, because we find that even if counsel erred in failing to object to this testimony, the omission was not sufficiently prejudicial to warrant habeas relief. In light of the strong evidence that Tate wished to keep Parker out of her apartment on that day and that once he entered a vicious struggle ensued, the jury could have reasonably inferred (indeed, could hardly have done otherwise) that Tate wished to end her relationship with Parker even without this evidence. Moreover, given the strong evidence of guilt, Parker has failed to show that there is a reasonable probability that, but for counsel's failure to object to this evidence, the result of the trial would have been different. See Strickland 466 U.S. at 694.

Parker next attacks his trial counsel's failure to call Donald Cohen as a witness in his defense. Cohen allegedly would have testified that he saw a man leaving Tate's apartment building around the time of the killing. Cohen's description of this man is inconsistent with Parker's appearance. This claim was first addressed to the state court at Parker's sentencing hearing, during which his trial counsel stated that he had spoken with Cohen, but that Cohen refused to give him an address or phone number at which he could be contacted. Counsel further stated that he and his investigator set up a meeting with Cohen but that Cohen did not show up for the arranged meeting. According to counsel, he and his investigator perceived that Cohen was extremely reluctant to get involved and that "as a matter of trial strategy [they] felt there

was nothing to do."

Parker again raised this claim in his Rule 29.15 motion for post-conviction relief. The Rule 29.15 court, pointing to trial counsel's explanation of his actions, found the claim to be without merit. Several months after this hearing, Parker obtained an affidavit in which Cohen stated that he had been willing to testify at trial but that he was not called by anyone to do so. In addition, more than three years after obtaining Cohen's affidavit, Parker obtained an affidavit from his brother, Aaron Parker, stating that Aaron had met with trial counsel prior to Parker's trial and gave him Cohen's address and phone number. As these affidavits were prepared after the conclusion of the state-court proceedings, the district court was apparently the first court to consider this new evidence. The district court determined that an evidentiary hearing on this issue was not warranted, and we agree.

We must evaluate counsel's decision not to interview or call a particular witness from the perspective of counsel at the time the decision was made. See Whitmore v. Lockhart, 8 F.3d 614, 619 (8th Cir. 1993). When evaluated in this light, trial counsel's performance did not fall outside the wide range of professionally reasonable performance. See Strickland, 466 U.S. at 687.

In any event, we find that Parker was not prejudiced by counsel's failure to call Cohen as a witness. The jury heard uncontroverted testimony that Parker was sitting outside Tate's apartment less than two hours before the murder and that a person, whom Tate was calling "Ronnie" and whose voice Graham testified sounded like Parker's, was in Tate's apartment punching her and shouting "Where is my gun?" less than an hour before Tate was shot. In light of this testimony, we conclude that there is no reasonable likelihood that the outcome of the trial would have been different had the jury heard testimony that a man who did not fit Parker's description was seen leaving the building around the time of the

murder.  See Strickland, 466 U.S. at 694.


### B.  Appellate Counsel


Parker argues that his appellate counsel was ineffective for failing to raise two issues on appeal:  1) the trial court's admission of evidence of threats allegedly received by prosecution witnesses; and 2) the sufficiency of the evidence supporting the murder conviction.


We find that counsel's failure to raise these issues on appeal did not rise to the level of constitutionally deficient performance. Reasonable appellate strategy requires an attorney to limit the appeal to those issues which he determines to have the highest likelihood of success. To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on appeal.  See Ruff v. Armontrout, 77 F.3d 265, 268 (8th Cir. 1996).


Evidence that witness Strong had received threats that led to his reluctance to testify against Parker arose because of a strategy followed by Parker's trial counsel.  Strong's testimony before the grand jury was highly favorable to the state.  At a pre-trial hearing, however, he became a much less cooperative witness.  In fact, he initially attempted to exercise his perceived Fifth Amendment right against self-incrimination. When the prosecuting attorney met with him and ostensibly explained that he was in no danger of incriminating himself and therefore had no Fifth Amendment right not to testify, Strong reluctantly testified against Parker, both at the hearing and at trial.  On cross examination at trial, defense counsel asked Strong if he remembered taking the Fifth Amendment at the pre-trial hearing.  The state objected on relevancy grounds, but the court allowed the testimony, giving the state permission to question Strong on this point during re-direct examination.  On re-direct, the prosecuting attorney

elicited an explanation from Strong that his attempt to invoke the Fifth Amendment was prompted by his fear that his family would be harmed if he testified.

Having opened the door to this testimony, Parker may not now argue that the court erred in allowing the state to obtain an explanation for Strong's reluctance to testify. Accordingly, appellate counsel's failure to raise this issue on appeal was not only reasonable, but prudent.

Parker next attacks his appellate counsel's choice to appeal the sufficiency of the evidence supporting the sodomy conviction but not of that supporting the murder conviction. In light of the ample evidence supporting the murder conviction, we find this decision to be well within the bounds of competent appellate assistance.

## C. State Post-Conviction Counsel

The basis of Parker's final ineffective assistance claim is that potential jurors at his trial were challenged solely on the account of their race in violation of Batson v. Kentucky, 476 U.S. 79 (1986). This claim comes to us in a rather convoluted posture. Parker claims that his trial counsel was ineffective for failing to raise a Batson challenge during the voir dire. Because this claim was considered by the Rule 29.15 court, Parker is confined to an argument that his state post-conviction appellate counsel was ineffective for failing to appeal the Rule 29.15 court's denial of this claim. Because a defendant has no constitutional right to effective assistance of counsel on the appeal of a Rule 29.15 motion, ineffective assistance claims such as this one are not cognizable. Lowe-Bey v. Groose, 28 F.3d 816, 820 (8th Cir.), cert. denied, 115 S. Ct. 674 (1994).

**IV.**

Parker next argues that he was denied due process because the evidence was insufficient to support his sodomy conviction. A sodomy conviction under Missouri law requires proof that defendant "has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion." Mo. Rev. Stat. § 566.060.

We conclude that Parker's challenge to the sufficiency of the evidence is without merit. Tate's mother testified that her daughter and Parker were not married. The medical examiner found numerous sperm in Tate's rectal cavity, which implied that Tate had engaged in anal sex. Strong testified that he heard a male named "Ronnie" state to a female, who could hardly have been anyone other than Tate, "If [you are] going to act like a dog, I'll treat you like a dog," and "Get f--- naked." Moreover, the jury heard evidence of possible coercion with a gun and evidence of scratches and punctures on Tate's back and buttocks. Viewed in the light most favorable to the verdict, this circumstantial evidence was sufficient to allow a reasonable jury to infer that Tate was forced to submit to anal intercourse and that Parker was the perpetrator.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.