# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3462

_____

| | | |
|---|---|---|
| William Weaver, | * | |
| | * | |
| Petitioner-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri |
| Michael Bowersox, | * | |
| | * | |
| Respondent-Appellant. | * | |

_____

Submitted:  June 13, 2000

Filed:  February 23, 2001

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

The State of Missouri appeals from the judgment of the district court granting William Weaver's petition for habeas corpus relief under 28 U.S.C. § 2254.  The district court determined that Weaver's Fourteenth Amendment rights under the Equal Protection Clause were violated when the state prosecutor exercised two peremptory strikes against black venirepersons during Weaver's murder trial.  We reverse; we also remand to the district court to address the remaining twenty-one issues raised in Weaver's petition.

## BACKGROUND

On July 19, 1988, a St. Louis County jury convicted Weaver, a black male, of first-degree murder for the death of Charles Taylor. The following day the jury sentenced Weaver to death.

During jury selection, the prosecutor exercised seven of his nine peremptory strikes on white venirepersons and the remaining two on black venirepersons, leaving a jury comprised of nine whites and three blacks. Weaver challenged the two strikes against black venirepersons, relying upon the Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79 (1986). The state trial court held a hearing at which the prosecutor explained his peremptory strikes by stating

> there's not a pattern of discrimination or systematic exclusion. There are three blacks on the jury, which is 25% of the jury, which I think is significantly higher than the black population in St. Louis County.

> The two blacks I struck with my peremptory strikes were not because the people were black but for other reasons. Let's see. Juror number 27, Ms. Burns, I struck her for a number of reasons: One, in the death penalty phase, although she said she could impose the death penalty, I wasn't persuaded that she could. I thought she said it with some reluctance and some hesitation. I also couldn't maintain eye contact with her. I know bad vibrations and bad chemistry between a lawyer and a prospective juror doesn't carry great weight with the Court or, at least, the Court of Appeals, but I think it's a legitimate reason for the attorney to strike someone.

> In any event, I was not persuaded that she could give the death penalty, particularly to a fellow black person. I didn't think she was strong enough. I observed her a lot of times cutting up and talking to the black gentleman next to her, Mr. Innman, who I have left on the jury by way of my strikes. And I simply felt that she would not be a fair and impartial juror.

With regard to juror number 54, Ms. Newsome, I felt that she was a weak person, both during voir dire on the death penalty, and on the voir dire – just the general voir dire, although Ms. Black conducted most of it. My impression of her was that she was not particularly bright and I struck a couple of white people for that very same reason. I thought in a case like this I needed intelligent people. I didn't figure she qualified in that regard and I thought she took the whole matter rather frivolously.

But in any matter, Judge, of nine peremptory strikes, I have used only two to strike blacks. Seven were used to strike whites. I have left three blacks on the jury, even though I have enough peremptory strikes to attempt to remove all five.

. . .

Perhaps I misstated my case somewhat with Ms. Newsome when I say intellectually weak. What I really meant is her personality struck me – granted, she did try hard to get on the jury, which showed civic minded interest; but in those interviews with the Court, she just struck me as a person that was a weak personality where the death penalty is involved, and I didn't think she would be able to vote for the death penalty.

In evaluating the <u>Batson</u> claim, the state trial court observed that three of the jurors remaining on the panel were black, and also that the alternate juror was black. The trial court denied the <u>Batson</u> challenge stating that, "the court does find that no prima facie showing of discrimination in the jury selection has been made."

Weaver brought post-conviction motions for relief in state court, which were denied. He also appealed his conviction and sentence to the Missouri Supreme Court. Weaver's direct appeal was consolidated with his appeal from the denial of his post-conviction motions. On December 19, 1995, the Missouri Supreme Court affirmed the conviction and death sentence. <u>See</u> <u>State v. Weaver</u>, 912 S.W.2d 499 (Mo. 1995).

The Missouri Supreme Court analyzed the Batson claim differently than the trial court. Rather than reviewing the trial court's determination that the defendant had not established a prima facie showing of discrimination, on appeal the court focused on whether the prosecutor had offered race-neutral explanations for his peremptory strikes. The Missouri Supreme Court concluded that the prosecutor's stated reasons for striking venireperson Burns were race-neutral, and that no Batson violation occurred.

> What a prosecutor observes about a potential juror in voir dire, as well as what is said, may form a legitimate nondiscriminatory basis for exercising a peremptory strike. See Purkett, ___ U.S. ___, 115 S. Ct. at 1771. Those observations here included reluctance and hesitation in answering questions, lack of eye contact with the prosecutor, lack of strength, and "cutting up" and talking during voir dire. The prosecutor's explanation here was specific, race-neutral, and free of any racially discriminatory purpose. The trial court had the opportunity to observe the juror in question, listen to the manner in which she answered the questions, and to assess the prosecutor's demeanor and reasons for striking the juror.

Weaver, 912 S.W.2d at 509.

The Missouri Supreme Court also concluded that no Batson violation occurred with respect to venireperson Newsome:

> As to [Newsome], the state's reason for striking her was race neutral. By her words and conduct, [Newsome] led the prosecutor to believe that she was frivolous, had a weak personality or was intellectually weak, particularly where the death penalty was concerned. It is not inherently pretextual to say that in a capital case a prosecutor would want serious jurors that are of above average intelligence and not reluctant to impose the death penalty when appropriate.

Id. at 509-10.

# PROCEDURAL HISTORY

On April 18, 1996, Weaver filed a pro se habeas corpus petition in federal district court. At that time, Weaver had not yet petitioned the United States Supreme Court for review of the Missouri Supreme Court's decision affirming his conviction and death sentence. The district court dismissed Weaver's petition without prejudice so that he could fully exhaust his state remedies. Weaver petitioned the Supreme Court for a writ of certiorari, which the Court denied on October 7, 1996. Weaver v. Missouri, 519 U.S. 856 (1996).

On November 12, 1996, Weaver filed a second pro se habeas corpus petition in federal court. After the district court appointed counsel to assist Weaver in presenting his petition, Weaver filed an amended petition raising the Batson claim and twenty-one other issues.

Weaver's two petitions straddled the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA) (effective April 24, 1996), which set new standards that curtail the federal courts' review of constitutional challenges to state custody. See generally, Williams v. Taylor, 529 U.S. 362, ___, 120 S. Ct. 1495, 1518 (2000) (O'Connor, J., concurring, writing for five Justices on this point).

On August 9, 1999, the district court granted Weaver a writ of habeas corpus. The district court held that the state trial court improperly applied Batson's three-step process for analyzing a prosecutor's use of peremptory strikes.[1] Citing Hernandez v.

---

[1]Batson's three-step process first requires the defendant to make a prima facie showing that the prosecution exercised one or more peremptory challenges based on race. Second, after a prima facie showing is made, the burden shifts to the prosecutor to give a racially neutral explanation for the challenge. Third, the trial court must decide

New York, 500 U.S. 352 (1991), the district court decided that the state trial court applied Batson unreasonably — instead of considering whether the prosecutor's articulated reasons for the peremptory strikes were race neutral, the state trial court merely found that the defendant had made no prima facie showing. Hernandez holds that a defendant's prima facie requirement becomes moot if a prosecutor offers a race-neutral explanation before the court rules that the defendant made a prima facie showing. See Hernandez, 500 U.S. at 359.

In addition, the district court independently analyzed the prosecutor's stated reasons for striking venireperson Burns. The district court found that the prosecutor struck Burns for reasons which were not race neutral.

The district court did not specifically address whether Weaver's petition should be analyzed under AEDPA, concluding that a Batson violation had occurred even if the state trial court's actions were examined under the heightened standard. In addition, the district court addressed only the state trial court's decision, and did not consider whether the Missouri Supreme Court decision was contrary to, or involved an unreasonable application of Batson. After granting Weaver a writ based upon the Batson claim, the district court declined to address Weaver's remaining twenty-one claims.

---

whether the defendant has established purposeful discrimination. See Batson, 476 U.S. at 96-98.

## DISCUSSION

### I.   Application of AEDPA

As a threshold matter, we must decide whether AEDPA, and its new standard of review, applies to Weaver's habeas petition. Weaver asks us to apply the pre-AEDPA standard. He filed his first petition on April 18, 1996, six days before AEDPA took effect. That petition was dismissed without prejudice for failure to exhaust state remedies. After exhausting state remedies, Weaver returned to federal court on November 12, 1996. He notes that, under pre-AEDPA law, the second filing constituted a mere continuation of the first filing, because the first was not adjudicated on the merits. See Sanders v. United States, 373 U.S. 1, 17 (1963). Thus he argues that the standard in effect when he filed his first petition applies.

We disagree. AEDPA's provisions apply to all habeas corpus petitions filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320, 326 (1997). We hold that this rule applies even when a prisoner's original petition was filed prior to AEDPA's effective date and dismissed without prejudice for failure to exhaust state remedies. See Barrientes v. Johnson, 221 F.3d 741, 751 (5th Cir. 2000); see also Mancuso v. Herbert, 166 F.3d 97, 101 (2nd Cir. 1999).

Weaver's argument proves a different point. We agree that Weaver's second, post-AEDPA filing isn't a second or successive petition. See Slack v. McDaniel, 529 U.S. 473, ___, 120 S. Ct. 1595, 1604-05 (2000). But "whether a petition is a 'second or successive' application under the AEDPA is an entirely different question" than whether AEDPA applies to a petition filed after the Act's effective date. Mancuso, 166 F.3d at 101 n.4; see Barrientes, 221 F.3d at 751 ("Whether the petition at issue will be considered 'second or successive' within the meaning of the Act is immaterial to the analysis"). For present purposes, then, the question is whether AEDPA applies; we hold that it does because Weaver's petition was filed after AEDPA's effective date.

-7-

## II.    Standard of Review

A state prisoner may seek a writ of habeas corpus in federal court if his confinement violates the federal Constitution or federal law.  28 U.S.C. § 2254(a). Under AEDPA, a federal court may grant such a writ only if the state court proceedings

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254 (d)(1) & (2).

Section 2254(d) distinguishes between two types of erroneous decisions — those of law and those of fact —  and treats each in separate subparagraphs.  Claims of legal error, whose review is governed by § 2254(d)(1), admit of even finer gradations.  See Williams, 120 S. Ct. at 1519-20 (delineating four separate categories of § 2254(d)(1) cases).  Claims of factual error are subjected to the standard enunciated in § 2254(d)(2); section 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact.

As a preliminary matter, then, we must identify the particular statutory provision that governs Weaver's case.  Weaver challenges the state court's disposition of his Batson claim.  We have held that each of the three steps of the Batson inquiry involves a determination of fact.  See United States v. Moore, 895 F.2d 484, 485 (8th Cir. 1990) (step one: prima facie showing); Shurn v. Delo, 177 F.3d 662, 665 (8th Cir. 1999) (step two: prosecutor's race-neutral explanations); United States v. Fuller, 887 F.2d 144, 146 (8th Cir. 1989) (step three: court's ultimate finding on purposeful discrimination).

-8-

Because Weaver's challenge necessarily involves a question of fact, we must review his claim under § 2254(d)(2). Accordingly, our review presumes that the Missouri courts found the facts correctly, unless Weaver rebuts that presumption with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). It bears repeating that even erroneous fact-finding by the Missouri courts will not justify granting a writ if those courts erred "reasonably." Cf. Williams, 120 S. Ct. at 1522 (discussing the meaning of the word "unreasonable" as employed in § 2254(d)(1)).

### III.   The Batson Claim

#### A.   The State Trial Court Decision

The state trial court rejected Weaver's Batson challenge, explaining that "no prima facie showing of discrimination in the jury selection has been made." We regularly defer to the fact-findings of trial courts because those courts are uniquely positioned to observe the manner and presentation of evidence. Our deference to trial court fact-finding is doubly great in the present circumstance because of the "unique awareness of the totality of the circumstances surrounding voir dire," Moore, 895 F.2d at 486, and because of the statutory restraints on the scope of federal habeas review.

First, a trial court's determination of the Batson prima facie step is highly fact-intensive. The determination is based largely upon information "that will not be evident from a reading of the record," such as the ability to "evaluate general demeanor; to observe attention span, alertness, and interest; and to assess reactions indicating hostility or sympathy towards or fear of the parties." Id. at 485-86. Second, on habeas review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings, see 28 U.S.C. § 2254(e)(1).

Weaver's showing falls short of rebutting the presumptive correctness of the state trial court's determination that <u>Batson</u> wasn't violated. Weaver points to the fact that the state trial court's express findings were limited to comments about the racial composition of the jury — a "numbers analysis." He directs us to our earlier precedent that a numbers analysis cannot, on its own, negate a prima facie case. <u>See</u> <u>United States v. Johnson</u>, 873 F.2d 1137, 1139-40 (8th Cir. 1989). But Weaver advances no additional support for his claim that the state trial court determined the facts "unreasonably" in light of the totality of the evidence presented. <u>See</u> 28 U.S.C. § 2254 (d)(2).

Contrary to Weaver's assertions, we believe that the district court's numbers analysis entails precisely the opposite conclusion. Our early <u>Batson</u> cases (decided during roughly the same time period as the instant state court decision) suggest that a numbers analysis is relevant in determining whether a defendant has established a prima facie case. <u>E.g.</u>, <u>Moore</u>, 895 F.2d at 486 n.5; <u>United States v. Fuller</u>, 887 F.2d 144, 146 (8th Cir. 1989). Of course, the trial court's decision does not stand or fall on a numbers analysis alone. The state trial judge personally observed the venirepersons' demeanor during voir dire, and doubtless developed a sense for those their acumen. Likewise, the state trial judge personally observed the prosecutor during the exercise of peremptory strikes, and later when he explained his conduct.

In addition, we agree with the State of Missouri's contention that Weaver failed to provide additional evidence at the <u>Batson</u> hearing to establish a prima facie case. Weaver argued only against the weight of the race-neutral reasons proffered by the prosecutor, without demonstrating that the prosecutor's reasons were pretextual.

In sum, the trial court's use of numbers analysis (a relevant factor), coupled with the court's unique opportunity to observe the entirety of voir dire, coupled with Weaver's failure to provide additional evidence at the <u>Batson</u> hearing, supports the state trial court's decision to deny Weaver's <u>Batson</u> claim. <u>See</u> <u>Luckett v. Kemna</u>, 203 F.3d

1052, 1054 (8th Cir. 2000). Weaver has failed to overcome the statutory presumption of correctness afforded the state court's fact-finding. Because he cannot denigrate the state trial court's factual determinations, we cannot conclude that the state trial court's decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).[2]

## B.      The Missouri Supreme Court Decision

We also examine the Missouri Supreme Court's decision because it was based on different grounds than the state trial court decision. Cf. Ward v. French, 989 F. Supp. 752, 761 (E.D.N.C. 1997) (addressing the presumptive correctness of  factual findings made by both a state trial court and the North Carolina Supreme Court).  The Missouri Supreme Court did not review the trial court's prima facie determination, but instead made its own express factual finding that the prosecutor gave race-neutral explanations for his two peremptory strikes. See Weaver, 912 S.W.2d at 509.

---

[2]The district court concluded that Weaver's petition raised a § 2254(d)(1) challenge, namely, the state trial court's "unreasonable application of" Batson.  The district court faulted the state trial court for analyzing the alleged violation under step one of the Batson analysis (prima facie showing), instead of moving to step two when the prosecutor gave race-neutral explanations for striking the black venirepersons. The district court erred in this respect.  Weaver's petition raised Batson claims, which require factual determinations.  As we explained above, § 2254(d)(2) governs federal review of state court factual determinations.

Even if subsection (d)(1) had applied, however, the district court's analysis was flawed.  Weaver was tried in July 1988, nearly three years before the Supreme Court decided Hernandez v. New York, which holds that a defendant's prima facie showing is mooted when the prosecutor explains his strikes before the court can rule on the prima facie step. 500 U.S. at 359.  The state trial court can hardly be faulted for failing to follow a Supreme Court decision that didn't exist at the time of Weaver's murder trial. Cf. Luckett, 203 F.3d at 1053 & 1055 n.8 (involving habeas review of a pre-Hernandez Batson decision, declining to apply the Hernandez rule, and analyzing the state court's decision under step one of Batson instead).

Findings of fact made by state appellate courts have the same presumptive correctness as findings of fact made by state trial courts. Cf. Sumner v. Mata, 449 U.S. 539, 546-47 (1981) (applying the pre-AEDPA version of 28 U.S.C. § 2254 (e)(1)); Jones v. Jones, 938 F.2d 838, 842-43 (8th Cir. 1991) (citing Sumner v. Mata and addressing findings of fact made by Missouri appellate courts on a Batson claim).

As with the state trial court's fact-finding, Weaver has failed to rebut the presumptive correctness of the Missouri Supreme Court's determination that the prosecutor gave race-neutral reasons for striking two venirepersons. The only point that bears elaboration is the prosecutor's comment that "[i]n any event, I was not persuaded that [Burns] could give the death penalty, *particularly to a fellow black person*." (Emphasis added). Weaver argues that this statement is racially discriminatory on its face, and requires a finding of a Batson violation. The Missouri Supreme Court held that this comment did not violate Batson because it was clear that the "prosecutor's decision to strike B[urns] was *not based solely upon race* or upon any assumptions about persons of [Burns's] race *but was based* upon the way she behaved and answered questions, that is, hesitation, lack of eye contact, flippancy and other intangibles observed only by those present in the courtroom." Weaver, 912 S.W.2d at 509 (emphasis added).

The Missouri Supreme Court's analysis is consistent with the dual motivation analysis that we have recognized. See United States v. Darden, 70 F.3d 1507, 1531 (8th Cir. 1995). In Darden, we rejected a Batson claim where the prosecutor gave several race-neutral reasons for striking a venireperson before adding one reason that was discriminatory. The district court did not expressly find that the prosecutor's peremptory strike was based solely on the race-neutral reasons, but said "the other reasons you expressed give cause that are . . . racially neutral – the other reasons you stated. . . . For that reason I'm allowing the strike. . . . [T]he other reasons you gave give the basis for being a strike." Id. (quoting the trial transcript). We held that the district court's decision "was equivalent to a finding that the prosecutor would have

-12-

exercised the strike even without the one non-racially neutral motive." Id. (emphasis added).

Here, the Missouri Supreme Court found that the peremptory strike "was based" upon the several race-neutral reasons given by the prosecutor. Weaver, 912 S.W.2d at 509. That decision, as in Darden, is equivalent to a finding (and necessarily implies) that the prosecutor would have exercised the strike even if he hadn't expressed a facially discriminatory motive. Thus, we find no "unreasonable" error in the Missouri Supreme Court's factual determination. See 28 U.S.C. § 2254(d)(2); cf. Williams, 120 S. Ct. at 1522.

## IV.   The Remaining Claims

After determining that a Batson violation occurred, the district court failed to address the remaining twenty-one issues raised by Weaver in his petition. We have instructed district courts to decide *all* issues raised in a habeas petition, particularly in death penalty cases, on the grounds that "the allowance of piecemeal litigation cannot possibly serve the interests of society, the defendant or the crime victim." Hulsey v. Sargent, 15 F.3d 115, 119 (8th Cir. 1994). On remand, the district court must address all of Weaver's remaining claims at the same time, regardless of their disposition.

## CONCLUSION

For the reasons stated above, we reverse and remand for further proceedings consistent with this opinion.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

Because the prosecutor's open admission that he based his decision to strike Ms. Burns partly upon her race constitutes direct evidence of unconstitutional

-13-

discrimination, the state trial court was, in my view, required to make an inquiry into whether the prosecutor would have made the same decision absent the illegal animus. The state trial court never made the necessary finding on this crucial factual matter, however, nor did the Missouri Supreme Court, because it applied the wrong legal standard. The Supreme Court of Missouri merely held that "the prosecutor's decision to strike [Ms. Burns] was not based *solely* upon race or upon any assumptions about persons of her race." *See Weaver*, 912 S.W.2d at 509 (emphasis supplied). This holding begs the question because the relevant issue is not whether the prosecutor based his strike solely on race, but whether he would have stricken Ms. Burns had race not been a motivation. *See United States v. Darden*, 70 F.3d 1507, 1531-32 (8th Cir. 1995). I believe that this legal error involved at the very least an unreasonable application of *Batson*.

I also think, moreover, that the district court erred in holding, essentially, that it would be unreasonable to find on the record before the state trial court that the prosecutor would have made the same decision absent the unconstitutional animus. For that reason, I would remand to the district court with directions to issue a writ of habeas corpus ordering Mr. Weaver's release unless within 120 days the state court makes a finding in accordance with the principles laid down in *Batson*. *See Coulter v. Gilmore*, 155 F.3d 912 (7th Cir. 1998). In other words, on remand, the state court would be obliged to decide whether the prosecutor would have stricken Ms. Burns but for her color. If he would not have, Mr. Weaver would be entitled to relief.

I therefore respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.