230 F.Supp.2d 971 (2002)
Arlandus KEYES, Petitioner,
v.
Michael BOWERSOX, Respondent.
No. 4:99 CV 887 DDN.
United States District Court, E.D. Missouri, Eastern Division.
September 17, 2002.
*972 *973 Arlandus Keyes, Mineral Point, MO, pro se.
John Morris, Cassandra K. Dolgin, Attorney General of Missouri, Assistant Attorney General, Jefferson City, Mo, for Respondent.

MEMORANDUM
NOCE, United States Magistrate Judge.
This matter is before the court on the petition of Missouri prisoner Arlandus Keyes for a writ of habeas corpus under 28 U.S.C. § 2254. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court concludes that Keyes is not entitled to habeas relief.
Keyes was convicted by a jury in the Circuit Court of the City of St. Louis, Missouri, of one count of murder in the first degree, four counts of armed criminal action, one count of assault in the first degree, and two counts of robbery in the first degree. He was sentenced to a total of consecutive terms of life imprisonment without the possibility of parole, life imprisonment, and 15 years imprisonment. The prosecution had sought the death penalty. The Missouri Court of Appeals affirmed Keyes's convictions and sentences, as well as the denial of his motion for post-conviction relief.[1]
In his petition for federal habeas relief, Keyes, who is African-American, claims that his constitutional rights were violated in the following ways:
(1) The trial court improperly allowed the prosecutor to rehabilitate a witness with a prior consistent statement.

*974 (2) The trial court improperly overruled defense counsel's objection, under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the prosecutor's use of a peremptory strike against an African-American venireperson.
(3) The trial court improperly allowed the introduction into evidence of an uncharged bad act by Keyes.
(4) The trial court improperly overruled Keyes's motion to suppress evidence allegedly seized without a warrant or consent.
(5) Trial counsel rendered ineffective assistance of counsel in failing to provide Keyes with information relevant to the decision of whether to testify, to call a certain witness, to raise a certain point in the motion for a new trial, to object to certain evidence, to object to the closing argument, and to object to a certain instruction.
(6) The prosecutor used known perjured testimony, violated Batson, and made inflammatory comments during closing argument.
Respondent argues that habeas relief should be denied, because this court is procedurally barred from considering grounds 5 and 6; grounds 1,3 and 4 are not cognizable in a federal habeas action; and the state courts' adjudication of ground 2 was reasonable.
At trial, the state presented evidence that on December 3, 1992, a group of young men in a car pulled guns on two fourteen-year olds, David Johnson and Demetrius Butler, forced them into the car, and took them to an apartment in a boarded-up building. There were approximately six men in the apartment, including Keyes and Antwon Nelson. The group beat up Johnson and Butler, took their possessions, gagged them, and forced them into the trunk of the car. Keyes and Nelson drove the car to a park and ordered Johnson and Butler to lie down on their stomachs, which they did. Johnson, who survived the ordeal, testified that he saw Keyes shoot Butler in the head. Johnson further testified that Keyes then told Nelson to "cut" Johnson. Nelson stabbed Johnson in the neck and the two began tussling. While they were struggling, Keyes hit Johnson on the head and Johnson fell down. Nelson began stabbing Johnson until Johnson stopped moving, and Nelson and Keyes left. In a statement to the police, Keyes admitted that he was present during the commission of the crimes but asserted that another person stabbed and shot the victims. The defense presented no evidence in the guilt phase of the trial.

I. Procedural default
Respondent first argues that this court is procedurally barred from considering Keyes's claims that trial counsel rendered ineffective assistance, and that the prosecutor used perjured testimony and made inflammatory comments during closing argument. Under the doctrine of procedural bar, a federal habeas court will not review a claim that the state courts did not address, because the petitioner failed to meet the state's reasonable procedural requirements for presenting the claim. Lee v. Kemma, 534 U.S. 362, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002); Coleman v. Thompson, 501 U.S. 722, 729-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
A petitioner can avoid this bar by showing (1) legally sufficient cause for the default and actual prejudice resulting from the alleged constitutional violation, or (2) that he is actually innocent. Reagan v. Norris, 279 F.3d 651, 656 (8th Cir.2002).
The doctrine applies whether the procedural default occurred at trial, on appeal, or on state collateral attack. Murray v. Carrier, 477 U.S. 478, 490-92, 106 *975 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A Missouri petitioner's failure to present a claim on appeal from a state court ruling constitutes such a procedural default. Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997), cert. denied, 523 U.S. 1010, 118 S.Ct. 1197, 140 L.Ed.2d 326 (1998); Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir.1996), cert. denied, 520 U.S. 1257, 117 S.Ct. 2421, 138 L.Ed.2d 185 (1997).
Here, Keyes raised four issues in his consolidated appealthe issues raised in grounds 1 through 4 above. Resp. Exh. D. His claims of ineffective assistance of trial counsel and prosecutorial misconduct are, thus, procedurally defaulted. See Sweet, 125 F.3d at 1149-50. Keyes has not attempted to establish cause for the default. Nor does he argue that he is actually innocent. Accordingly, grounds 5 and 6 shall be dismissed as procedurally barred. See Flieger v. Delo, 16 F.3d 878, 885 (8th Cir.), cert. denied, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994).

II. Non-cognizable claims
As respondent argues, Keyes's claim that his convictions were obtained through the use of evidence seized in violation of his Fourth Amendment rights is not cognizable in this federal habeas action, because he had a full and fair opportunity to litigate the issue at trial, Resp. Exh. B-6 at 1008-33. See Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); Sweet, 125 F.3d at 1149-50.
Respondent also argues that Keyes's grounds 1 and 3 challenging evidentiary rulings by the trial court are not cognizable by this court. This is an overbroad statement of the law. Although ordinarily the admissibility of evidence at trial is a matter of state law and will not form the basis for federal habeas relief, a federal court may grant habeas relief when a state court's evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process. Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir.), cert. denied, 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 333 (1988). "In making this determination courts must review the totality of the facts in the case pending before them and analyze the fairness of the particular trial under consideration." Id. (quoted case omitted). Accordingly, these claims, as well as the Batson claim, all of which have been properly preserved for federal habeas review, will be considered on the merits.

III. Standard of Review
Habeas relief may not be granted on any claim, unless the state court's adjudication of it
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). In reviewing the state court's decision, a fact determination is presumed to be correct and must be rebutted by clear and convincing evidence. Id. § 2254(e)(1).
A state court decision involves an "unreasonable application" of Supreme Court precedent, if the state court identifies the correct governing legal rule from the Supreme Court's cases "but applies it unreasonably to the facts of the particular state prisoner's case." Williams v. Taylor, 529 U.S. 362, 407-08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (plurality opinion). To warrant federal habeas relief, "the state court's application of Supreme Court precedent must be not only erroneous but also *976 objectively unreasonable." Owens v. Bowersox, 290 F.3d 960, 963 (8th Cir.2002).
The "unreasonable determination of facts" standard of § 2254(d)(2) is equivalent to the "unreasonable application" standard. Thus, relief may not be granted if the federal court merely concludes that the habeas petitioner has the better of two reasonable arguments, but only if the court is left with "a firm conviction" that the determination made by the state court was wrong and that the determination urged by the petitioner is correct. Torres v. Prunty, 223 F.3d 1103, 1108-09 (9th Cir.2000); see also Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir.2001) ("even erroneous fact-finding by the Missouri Courts will not justify granting the writ if those courts erred `reasonably'").

IV. Evidentiary Rulings
Keyes claims that two rulings by the trial court deprived him of his due process right to a fair trial. The first involves the testimony of Oscar Brown, a classmate of Nelson and Keyes, who was allowed to testify, over defense counsel's objection, that later on the same day as the crimes involved in this case, Keyes and others tried to abduct him and get him into Nelson's car. The Missouri Court of Appeals rejected Keyes's argument that the evidence constituted inadmissible evidence of an uncharged crime. The court held that the evidence was legally relevant to establish Keyes's participation in the crimes charged, and that the trial court did not abuse its discretion in determining that the prejudicial effect of the evidence outweighed its probative value. Resp. Exh. G at 9.
Oscar Brown's testimony was relevant to show petitioner's continuing participation in the group's criminal activities shortly after the murder. During Keyes's trial, Oscar Brown's testimony was simply that, as he was preparing to enter the school bus to go home from his East St. Louis, Illinois, high school, petitioner and his companions were near an acquaintance's car and told Brown that they would take him home in their car. Brown refused and got on the bus. Resp. Exh. B-7, at 1084. In closing argument, the prosecutor argued that petitioner's participation in the attempt to get Oscar Brown to accompany the group after school put the lie to petitioner's interview statement that he did not actively participate in the group's earlier murder and assault. Id. at 1412. The evidence of the group's grisly murder and assault far overshadowed the terse evidence of the later attempt to abduct Oscar Brown. The subject evidence was not "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." See Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir.1998) (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir.1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1439, 137 L.Ed.2d 545 (1997)).
The second challenged ruling concerns the prosecutor's use of a prior consistent statement made by David Johnson to rehabilitate him after defense counsel had impeached him with a prior inconsistent statement. As noted above, Johnson testified at trial that he was facing Butler when Butler was shot and that he saw Keyes shoot him. Resp. Exh. B-7 at 1132. Defense counsel impeached Johnson on cross-examination with a statement he had made during a deposition in November 1993. Johnson related that he was looking up when Butler was shot and did not see the shooter's face, but based his testimony that Keyes was the shooter on the voices and shoes of the perpetrators. Id. at 1192-93. On redirect, the prosecutor introduced, over defense counsel's objection, evidence that during a hearing in July *977 1994 Johnson gave testimony consistent with his trial testimony. Id. at 1213.
The Missouri Court of Appeals held that, indeed, Johnson's July 1994 testimony on this point was inadmissible under state rules of evidence as a prior consistent statement, because it was made after the prior inconsistent statement of November 1993. The court, however, held that this error was harmless, because Johnson was available at trial for cross-examination, and in fact defense counsel did so in depth. Resp. Exh. G at 5-6. The appellate court also noted as follows:
Sufficiency of the proof is not in question. Even without the prior statement of Johnson identifying defendant as the shooter, there was sufficient evidence for a jury to find defendant guilty of Butler's murder. Jury instructions were given under which defendant could have been found guilty as an accomplice. Therefore, whether or not defendant actually pulled the trigger which killed Butler is irrelevant to his conviction. Johnson's testimony established that defendant was one of two perpetrators who took Butler and him to the park, and therefore, defendant was involved in the murder. Defendant has failed to show that the elicited statement had a decisive effect on the jury. We find no prejudice.
Id. at 6.
Keyes argues that Johnson's credibility on the issue of the shooter's identity was critical to the question of the degree of Keyes's culpability. This court concludes that the Missouri Supreme Court's decision on this issue is not contrary to, or an unreasonable application of, clearly established federal law. The fact that the prosecution was allowed to introduce Johnson's July 1994 testimony was not "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." See Parker, 94 F.3d at 460.

V. Batson Violation
Under Batson, the government violates the federal constitution when it exercises its peremptory challenges to strike potential jurors on account of their race. 476 U.S. at 89, 106 S.Ct. 1712. The case sets forth a three-step process to determine the validity of peremptory strikes by the prosecutor: (1) the defendant must make a prima facie showing that the state exercised a peremptory strike because of race; (2) if such a showing is made, the burden shifts to the state to articulate a race-neutral explanation for striking the prospective juror; and (3) the trial court must decide whether the defendant has proven purposeful discrimination. Id. at 96-98, 106 S.Ct. 1712; Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam); Weaver, 241 F.3d at 1030; Luckett v. Kemna, 203 F.3d 1052, 1053-54 (8th Cir.), cert. denied, 531 U.S. 888, 121 S.Ct. 209, 148 L.Ed.2d 147 (2000).
"A neutral explanation in this context means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
Here, the prosecution used six of its nine peremptory strikes to remove African-Americans from the jury. Defense counsel objected to four of these strikes, including that of venireperson 242. Resp. Exh. B-6 at 992.[2] The prosecutor proceeded *978 to present his purportedly race-neutral reasons for the first of these strikes. After he did so, the trial judge stated that the reasons were race-neutral and accepted the strike. Defense counsel asked for the opportunity to name white venirepersons who appeared to be similarly situated and who were not struck. The judge agreed, and defense counsel did so. This process was repeated with respect to the next two strikes. Id. at 993-1000.
The prosecutor then explained his reasons for striking venireperson 242he appeared to lean toward a life-sentence rather than the death penalty, he had two sons close to Keyes's age, he appeared strong-willed, and he came to court dressed in a T-shirt, indicating the amount of gravity he attached to the situation. Id. at 1000-01. The judge stated that the reasons appeared to be race-neutral. Defense counsel objected on the grounds that venireperson 242's position on the death penalty was at least as strong as that of white venirepersons who were not struck and that only two venirepersons had come to court in suits. The prosecutor and judge concurred that venireperson 242 was the only man who came in a T-shirt. Defense counsel stated that she did not recall what each venireperson wore, and the prosecutor moved on to present the reasons for the fourth challenged strike. Id.
After the jury was seated, defense counsel approached the bench and asked that the record reflect that three of the male jurors were wearing what appeared to be T-shirts. Id. at 1006.
On appeal, Keyes argued that his constitutional rights were violated, because the prosecutor's reasons for striking venireperson 242 were pretextual in that similarly-situated white jurors were not stricken; the proffered reasons were not supported by the record; and the trial court did not give defense counsel a meaningful opportunity to rebut the prosecutor's explanations for striking venireperson 242. Resp. Exh. D. at 23-33.
The Missouri Court of Appeals ruled as follows on this claim:
Defendant urges that the trial court prematurely ruled on the state's explanations when it stated that the explanations appeared to be race neutral. Defendant contends that the court erred in failing to consider that ruling following defense counsel's attempts to show the state's explanations were pretextual.
Defendant argues that the trial court's ruling on the Batson challenge was premature. This argument is misplaced. The trial court's statement merely notified defendant that the state had satisfied the second step in the Batson process by articulating clear race neutral explanations. The trial court did not state that it found that the state's explanations were not pretextual. Rather, the trial court's statement signified the shifting of the burden to defendant to show that the reasons articulated by the prosecutor were pretextual.
It is the defendant's responsibility to offer and present evidence in support of the contention that the state's reasons were pretextual. The trial court is not obligated to ask a defendant for his proof on the question of pretext. Defense counsel did proceed with her objection, and attempted to show that the state's explanations were pretextual. Following a brief discussion regarding one of defense counsel's proffered arguments, it was defense counsel who proceeded to discuss the next venireperson.
The trial court's determination that there was no purposeful discrimination is a finding of fact which should not be disturbed on appeal unless clearly erroneous....
Here defense counsel was allowed the opportunity to show pretext. Subsequently, *979 defense counsel did not request the trial court articulate its ruling regarding her objection to venireperson 242. The trial court's ruling is implicit in allowing defense counsel to move on, and in allowing the jury to be empaneled. Although the prosecutor articulated several reasons for striking venireperson 242, defense counsel's argument responded to only two of the reasons. Furthermore, defense counsel failed to refer to any other venireperson who was similarly situated with respect to the prosecutor's several arguments and whom the state did not strike.
The explanations given were race-neutral. The trial court accepted the explanation. We have examined the explanations and the circumstances which appear in the record, and we cannot say that the trial court abused its discretion in finding no Batson violation.
Resp. Exh. G at 7-8 (internal citations omitted).
Review of a Batson claim raised in a habeas petition presumes that the state courts found the facts correctly, unless petitioner rebuts that presumption with clear and convincing evidence. Weaver, 241 F.3d at 1030. This court's deference to the fact-finding of the state trial court is "doubly great in the present circumstance because of the unique awareness of the totality of the circumstances surrounding voir dire." Id. at 1030 (quoted case omitted).
The court first concludes that the Missouri Court of Appeals' decision upholding the procedures followed by the trial court in ruling on Keyes's challenge to venireperson 242 was not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. See United States v. Roan Eagle, 867 F.2d 436, 441 (8th Cir.) (in context of Batson inquiry, "[i]t the trial judge is able to reach a determination on the basis of a short exchange between prosecutor and defense then that is the trial court's prerogative"), cert. denied, 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989).
A closer question is presented on Keyes's substantive Batson claimthat the prosecutor's reasons for striking venireperson 242 were pretextual and unsupported by the record. It is true that the reasons proffered by the prosecutor were all race-neutral. See, e.g., Luckett, 203 F.3d at 1054 (weak responses on death penalty question and being similar in age to the defendant are race-neutral reasons); Roan Eagle, 867 F.2d at 441 (same as to "slovenly" appearance of venireperson). The transcript of the voir dire proceeding, Resp. Exh. B-3 at 472-76, however, leaves doubt as to whether venireperson 242 appeared to lean toward a life sentence rather than the death penalty, as claimed by the prosecutor. Although he mentioned that his personal opinion was opposed to the death penalty, he repeatedly stated that he could and would vote for the death penalty if the evidence warranted it, even if the state did not prove that Keyes actually pulled the trigger himself. Id. Nevertheless, the trial court was in a better position to judge venireperson 242's attitude towards the death penalty than is this court from reading the bare transcript. See Weaver, 241 F.3d at 1030.
Furthermore, the prosecutor gave other race-neutral reasons for striking venireperson 242. Keyes did not show that these reasons were pretexts for a race-based motive. Nor did he show that white venirepersons who were not struck were similar to venireperson 242 in all relevant aspects. See Luckett, 203 F.3d at 1054-55 (habeas petitioner did not show that prosecutor's reason for striking African-American venireperson due to weak answers on *980 the death penalty was pretextual, despite prosecutor's failure to strike white venireperson who was weak on the death penalty, absent showing that white venireperson was similar in all relevant aspects to the stricken venireperson; stricken venireperson was similar in age to the defendant, unchallenged venireperson was similar in age to the victim); Malone v. Vasquez, 138 F.3d 711, 720 n. 13 (8th Cir.) (although both the challenged African-American venireperson and an unchallenged white venireperson had connections to a seminary, the white venireperson did not share the additional characteristic of being familiar with the prosecutor), cert. denied, 525 U.S. 953, 119 S.Ct. 384, 142 L.Ed.2d 317 (1998); Kilgore v. Bowersox, 124 F.3d 985, 992 (8th Cir.1997) (no pretext shown where white venirepersons who were not stricken were not "identical" to stricken African-American venirepersons; both groups had prior contact with the criminal justice system, but only the stricken group were weak in their willingness to impose the death penalty), cert. denied, 524 U.S. 942, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Keyes argues that the explanation based on venireperson 242 wearing a T-shirt was a sham because his dress was not much different from the dress of other members of the venire. On this point the trial judge was present in the courtroom and was in the best position to compare the dress of other venirepersons. In sum, the court concludes that the state courts did not determine the facts unreasonably in light of the totality of evidence presented. See Weaver, 241 F.3d at 1030.
An appropriate order dismissing petitioner Arlandus Keyes's habeas action shall accompany this Memorandum.

ORDER
In accordance with the Memorandum filed herewith,
IT IS HEREBY ORDERED that the petition of Arlandus Keyes for a writ of habeas corpus is denied. The action is dismissed with prejudice.
IT IS FURTHER ORDERED that a certificate of appealability under 28 U.S.C. § 2253(c) is denied. Petitioner has made no substantial showing of the denial of a constitutional right.
NOTES
[1] The appeals from the convictions and from the denial of post-conviction relief were consolidated pursuant to former Missouri Supreme Court Rule 29.15.
[2] Keyes also objected to the prosecutor's use of two of his alternate strikes to strike two African-American alternates.